**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MON RAIL TERMINAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-159 |
| | ) | |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| BOROUGH OF DUNLEVY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant Borough of Dunlevy ("Defendant," "Borough,"
or "Dunlevy")'s Motion for Summary Judgment (**Doc. 51**) and Plaintiff Mon Rail Terminal, Inc.
("Plaintiff" or "Mon Rail")'s Motion for Partial Summary Judgment (**Doc. 54**).  For the reasons
that follow, Defendant's Motion for Summary Judgment (**Doc. 51**) will be GRANTED, and
Plaintiff's Motion for Partial Summary Judgment (**Doc. 54**) will be DENIED.

## I.  MEMORANDUM

## A.  BACKGROUND

### a.  The Parties and Subject Property

Defendant is a small political subdivision, organized and existing under the Pennsylvania
Borough Code.  (Defendant's Concise Statement of Material Facts (Doc. 53) at ¶ 1; Plaintiff's
Response to Defendant's Concise Statement of Material Facts (Doc. 62) at ¶ 1).  Approximately
390 residents live in Dunlevy Borough together with a handful of businesses.  (Doc. 53 at ¶ 2;
Doc. 62 at ¶ 2).  The Borough is located along the southern banks of the Monogahela River, with

the majority of its developed area located between the river and State Route 88. (Doc. 53 at ¶ 3; Doc. 62 at ¶ 3).

Plaintiff owns 28.482 acres of property (the "Subject Property"), spanning across the municipal boundary between the Borough of Speers and the Borough Dunlevy, with approximately 1.4 acres located in Dunlevy. (Plaintiff's Concise Statement of Material Facts (Doc. 55) at ¶¶ 1-2; Defendant's Response to Plaintiff's Concise Statement of Material Facts (Doc. 63) at ¶¶ 1-2). The Subject Property is currently vacant (Doc. 55 at ¶ 2; Doc. 63 at ¶ 2). Since its inception, Plaintiff has owned no other property and conducts no business other than owning the Subject Property. (Doc. 53 at ¶ 14; Doc. 62 at ¶ 14). Plaintiff has no officers or employees, other than its President, Jeffrey Umbel. (Doc. 53 at ¶¶ 13, 15; Doc. 62 at ¶¶ 13, 15).

The Subject Property, which is located within a floodplain zone, is bounded: (a) to the west (in neighboring Speers Borough) by property owned by Guttman Realty Company; (b) to the north by the Monongahela River; (c) to the south by the freight rail lines owned and operated by Norfolk & Southern Railroad; and (d) to the east by a mobile home park property owned by Villages at Riverview, LLC, and an individual, single family residence now or previously owned and occupied by Charles Barcelona ("Barcelona property"). (Doc. 53 at ¶¶ 24-25; Doc. 62 at ¶¶ 24- 25). The Subject Property abuts Dewey Street, a public road in Dunlevy Borough, but does not have an existing driveway onto Dewey Street. (Doc. 55 at ¶ 3; Doc. 63 at ¶ 3). Dewey Street is the only non-private roadway abutting the Subject Property. (Id.). Until 2006, Mon Rail used River Avenue, a private entryway in Speers Borough owned by Guttman Realty Company ("Guttman"), to enter and exit the Subject Property. (Doc. 55 at ¶ 4; Doc. 63 at ¶ 4). However, in 2006, Guttman put up steel pipes filled with concrete to physically block Plaintiff's access to the Subject Property from River Avenue. (Id.).

In 2008, Plaintiff petitioned the Court of Common Pleas of Washington County to have River Avenue opened as a public road for access to the Subject Property. (Doc. 55 at ¶ 5; Doc. 63 at ¶ 5). In its Petition, Plaintiff averred that it had no access to Dewey Street due to developments and structures on the Barcelona property but that, even if it had, "such access would be too dangerous to use because of the need to cross the ungated rail road tracks owned by (Norfolk & Southern RR), then proceed up an extremely steep hill to the intersection of Dewey Street and Rt. 88, which is an uncontrolled intersection for traffic on Rt. 88." (Doc. 53-1, App., Ex. D at ¶ 4). In addition, Plaintiff averred that "[a]ccess to Rt 88 via Dewey Street is extremely dangerous because of the distance and speed limitations in either direction on to Rt. 88, which do not meet PennDOT's required minimum standards. Motor vehicle accidents, at the present time, already occur on a regular basis and increased motor vehicle traffic, which would include heavy trucks, would only make the intersection even more dangerous." (Id.).

In May 2009, the Court of Common Pleas of Washington County denied Plaintiff's request to open a public road over Guttman's property, finding that the Subject Property "is not landlocked" since Plaintiff "has an absolute right of access to Dewey Street." (Second Amended Complaint, Ex. B (Doc. 46-2), at 5). Specifically, the state court found that Plaintiff "has not alleged that it took any action to remove the obstructions, residence and trailers, on the Barcelona property," nor did it "allege[] that it has taken any action to compel Dunvely or PennDOT to make such access less dangerous." (Id.).

**b. 1988 Weight Limit Ordinance**

In 1988, Dunlevy Borough adopted an ordinance establishing a weight limit for all vehicles traveling on Borough streets (the "1998 Weight Limit Ordinance"). (Doc. 53 at ¶ 49; Doc. 62 at ¶ 49). The 1988 Weight Limit Ordinance provides a maximum limit for vehicles

driving over Dunlevy Borough streets of ten tons.  (Doc. 53 at ¶ 50; Doc. 62 at ¶ 50; see Doc 53-1, App., Ex. N).  Plaintiff presently is challenging the validity of the 1998 Weight Limit Ordinance before the Court of Common Pleas of Washington County at Docket No. 2010-4950. (Doc. 51 at ¶ 51; Doc. 62 at ¶ 51).  That matter has been stayed by agreement of the parties. (Doc. 62 at ¶ 51).

### c. **Ordinance No. 6-7-1996**

On October 8, 1996, Dunlevy Borough adopted an ordinance establishing requirements for driveways located within the Borough ("Ordinance No. 6-7-1996").  (Doc. 53 at ¶ 63; Doc. 62 at ¶ 63).  Section 7 of Ordinance No. 6-7-1996 states as follows:

> Section 7. Access to Property Outside the Borough of Dunlevy. No private driveway or private access roadway shall be used as ingress and/or egress to property located outside of the Borough of Dunlevy, unless the person(s) or corporation seeking such use can demonstrate to the satisfaction of Borough Council that said use will not create undue and unnecessary traffic problems on Dunlevy Borough streets, and that the use can be performed in a safe manner that will not inconvenience the Borough and its residents.  Any person(s) or corporation seeking such use (i.e. access to property located outside Dunlevy Borough) shall in addition to the permit application requirements set forth herein, file a petition with Council for a hearing.  Said hearing shall take place within sixty (60) days of the written request, provided that all application procedures and requirements have been met. Borough Council shall consider all relevant evidence presented at said hearing and shall render its written decision within thirty (30) days of the concluded hearing.

(Doc. 53 at ¶ 65; Doc. 62 at ¶ 65; see Second Amended Complaint, Ex. M (Doc. 46-13)).

According to Plaintiff, Dunlevy adopted Ordinance No. 6-7-1996 shortly after Dunlevy residents pled with the Borough Council to stop any residential development of Plaintiff's property.  (Doc. 55 at ¶ 8).  Following those meetings, Dunlevy Borough Councilman, Michael R. Bonn, sent a letter to Speers Borough stating that Dunlevy's "only objection is the construction of a private roadway which will result in the dumping of additional pedestrian &

vehicular traffic onto Dunlevy streets." (Doc. 55 at ¶ 8; Doc. 63 at ¶ 8; <u>see</u> Second Amended Complaint, Ex. C (Doc. 46-3)).

Dunlevy Mayor Joseph Ross Landman testified that Dunlevy Borough Council has never held a public hearing on a request for a driveway permit pursuant to Section 7 of Ordinance No. 6-7-1996. (Doc. 56-8, Deposition of Joseph Ross Landman ("J. Landman Dep."), at 17:3-6). Likewise, Dunlevy Borough Council President Dana Landman testified that she was unaware of any other property, other than the Subject Property, that was impacted by Section 7. (Doc. 56-9, Deposition of Dana Landman ("D. Landman Dep."), at 27:21-28:1).

Defendant Borough has explained that "undue and unnecessary traffic problems," as used in Section 7 of Ordinance No. 6-7-1996, "is dependent on the particular characters of the proposed driveway and traffic impacts . . . The amount of trucks or vehicles per hour/day/month which amount to an undue and unnecessary traffic problem are handled on a case by case basis." (<u>See</u> Doc. 55 at ¶ 21; Doc. 63 at ¶ 21). However, Mayor Landman testified that he was unaware of how the Borough defines "convenience" and "traffic problems" in Section 7 of Ordinance No. 6-7 of 1996. (Doc. 56-8, J. Landman Dep., at 22:2-14). Likewise, Council President Landman did not know what would constitute "undue and unnecessary traffic problems" under the Ordinance. (<u>See</u> Doc. 56-9, D. Landman Dep., at 28:2-28:9).

Plaintiff is challenging the validity of Ordinance No. 6-7-1996 in the Court of Common Pleas of Washington County in the same case discussed above (Docket No. 2010-4950), which has been stayed by agreement of the parties. (Doc. 53 at ¶ 66; Doc. 62 at ¶ 66).

**d.  <u>Defendant's 2009 Denial of Plaintiff's Request for an Excess Hauling Permit</u>**

At some point in 2009, Plaintiff entered into discussions with Antero Resources Appalachian Corporation ("Antero") regarding using the Subject Property to store large

quantities of water for off-site fracking operations. (Doc. 53 at ¶ 79; Doc. 62 at ¶ 79). In November 2009, Plaintiff submitted a request to Dunlevy Borough for an Excess Hauling Permit to exceed the 10-ton weight limit set out in the 1988 Weight Limit Ordinance, proposing to post $3,125 as a bond for the use of Dewey Street. (Doc. 53 at ¶ 80; Doc. 62 at ¶ 80).

On December 15, 2009, the Solicitor for Dunlevy Borough, Blane Black, wrote to Mr. Umbel to request additional information related to Plaintiff's application for an Excess Hauling Permit, including: the duration of the project; the types of trucks that would be utilized; and the hours of operation. (Doc. 53 at ¶ 81; Doc. 62 at ¶ 81). Mr. Black stated that the Borough Council "has serious concerns about the intersection of Dewey Street and State Route 88, and also utilization of the Dewey Street railroad crossing and potential damage to that crossing, especially considering that Dewey Street from Route 88 to the crossing is a steeply slopped [sic] roadway." (See Doc. 53-1, App., Ex. Z). Plaintiff denies receiving this letter. (Doc. 62 at ¶ 81). On February 3, 2010, Tetra Tech NUS, Inc., on behalf of Antero, submitted a letter to Dunlevy's Mayor regarding the proposed water withdrawal operation, stating that "it is anticipated that the average daily quantity utilized will not exceed 100,000 gallons per day." (Doc. 53 at ¶ 82; Doc. 62 at ¶ 82).

On March 3, 2010, Plaintiff entered into a lease agreement with Antero. (Doc. 53 at ¶ 83; Doc. 62 at ¶ 83). Kurt Lyles, a representative of Antero, subsequently appeared at a Dunlevy Borough Council meeting on March 9, 2010. (Doc. 53 at ¶ 84; Doc. 62 at ¶ 84). During that meeting, Mr. Lyles explained that Antero planned to install 10 to 15 water tanks on the Subject Property that would hold water for off-site fracking operations, and would use tank trucks to carry the water to certain gas wells. (Doc. 53 at ¶ 85; Doc. 62 at ¶ 85). Mr. Lyles explained that Antero would use 5,000 gallon water trucks for the operation. (Doc. 53 at ¶ 87; Doc. 62 at ¶ 87).

Members of the audience and the Borough Council raised questions concerning the traffic, noise and dangers to Dunlevy residents resulting from this operation. (Doc. 53 at ¶ 88; Doc. 62 at ¶ 88). Specifically, residents voiced concerns that the number of heavy vehicles moving through the narrow streets of Dunlevy would cause disruption to the community. (Doc. 53 at ¶ 89; Doc. 62 at ¶ 89). Following an executive session of the Borough Council, Solicitor Black recommended that the Council reject Plaintiff's request for an Excess Hauling Permit. (Doc. 53 at ¶ 90; Doc. 62 at ¶ 90). A motion was made and Plaintiff's request was denied. (Id.)

Solicitor Black subsequently memorialized the Borough's decision to deny Plaintiff's Excess Hauling Permit application in a letter to Plaintiff's counsel dated March 18, 2010. (Doc. 55 at ¶ 10; Doc. 63 at ¶ 10; see Second Amended Complaint, at Ex. L, Doc. 46-12 ("March 18, 2010 Letter")). The March 8, 2010 Letter stated that the Council decided to deny Plaintiff's request "at this time due to concerns of safety and potential damage to Dunlevy Borough streets and the existing railroad crossing." (Doc. 46-12). Solicitor Black also enclosed a copy of Ordinance No. 6-7-1996, and drew Plaintiff's attention to Section 7, indicating that this section is "applicable in this case." (Id.). Solicitor Black went on to write that, "based on the information Council heard at the most recent Council Meeting and comments of the public, . . . any application for an excavation permit to put in the private driveway or private access road will [] be denied under the Ordinance." (Id.). Solicitor Black noted, however, that Plaintiff has "a right to request, in writing, a hearing and that hearing will take place within 60 days once all application procedures and requirements have been met." (Id.) Solicitor Black further advised that Dunlevy would retain an engineering firm, Mackin Engineering Company ("Mackin Engineering") "to perform an appropriate study concerning the weight and safety issues raised by this potential project . . . ." (Id.).

Following its receipt of the March 18, 2010 letter, Plaintiff did not submit anything in writing to request a driveway permit or a hearing pursuant to Section 7 of Ordinance No. 6-7-1996. (Doc. 53-1, App., Ex. H, Deposition of Jeffrey Umbel ("Umbel Dep."), at 80). However, Mr. Umbel testified that he had verbal discussions regarding a driveway permit and that he requested an application but never received one. (Id.).

As the March 18, 2010 Letter indicated, Dunlevy later retained Mackin Engineering to perform a field review of the conditions of Frick, Dewey, and Walnut Streets. (Doc. 53 at ¶ 96). In a letter to the Borough dated July 13, 2010, Mackin stated that it was unsafe for vehicles such as those proposed by the Antero operation to access Route 88 from Dewey or Frick Street. (Id.; Doc. 53-1, App., Ex. F). The letter recommended that no loaded trucks be permitted to turn onto Route 88 from Dewey Street. (Id.) Plaintiff does not dispute that Mackin Engineering performed a field review but contests the company's conclusions, asserting that "Mackin made assumptions regarding the type, weight and length of the trucks traversing the Dunlevy's streets to reach its conclusions." (Doc. 62 at ¶ 96).

On July 26, 2010, Antero terminated the lease agreement with Plaintiff, stating, in part, that it "has been unable to obtain the approval and/or permitting necessary to withdraw water from the Monongahela River and to use Premises for the purposes set forth in the Lease." (Doc. 53 at ¶ 93; Doc. 62 at ¶ 93; see Doc 53-1, App., Ex. EE).

**e. 2015 Driveway Ordinance Amendment**

In 2015, Dunlevy enacted Ordinance No. 6-7-2015, amending Ordinance No. 6-7-1996, and adding further requirements for parties seeking a driveway permit in Dunlevy. (Doc. 55 at ¶ 24; Doc. 63 at ¶ 24). Ordinance No. 6-7-2015 requires, among other things, that a driveway serving a non-residential use "contiguous to any residentially-zoned or residentially used

8

properties" have "landscaping and screening in order to create a visual buffer between the proposed driveway or roadway and the contiguous residential use." (Doc. 55 at ¶ 26; Doc. 63 at ¶ 26). Moreover, Ordinance No. 6-7-2015 requires that to "the extent that a driveway or roadway serving a non-residential use is within a floodplain area, the Applicant shall be required to provide a secondary emergency access to the Subject Property for use by emergency services personnel." (Doc. 55 at ¶ 27; Doc. 63 at ¶ 27).

**f. Alleged Comparator**

Campbell Transportation Company, Inc. ("Campbell") is a river towing company located in the industrial zoning district of Dunlevy Borough. (Doc. 53 at ¶ 30; Doc. 62 at ¶ 30). Council President Dana Landman testified that "huge" trucks, defined as tractor-trailers, travel on Dunlevy streets to reach Campbell's property "sometimes . . . [but] not very often." (Doc. 62-2, Supp. App., Ex. A, D. Landman Dep., at 41). In addition, she testified that general delivery and small box trucks drive on Dunlevy roads to deliver items to Campbell's property "once or twice a month." (Doc. 53 at ¶ 32; Doc. 62 at ¶ 32).

In 2010, Campbell sought to construct a new fabrication shop on its property. (Doc. 53 at ¶ 33; Doc. 62 at ¶ 33). Campbell posted a road bond with Dunlevy Borough in the amount of $12,500 in connection with the construction of the new fabrication shop. (Doc. 53 at ¶ 34; Doc. 53-1, App., Ex. M).

**g. Procedural Background**

Plaintiff filed the instant lawsuit against both Dunlevy and Speers Boroughs on February 9, 2012. (Doc. 1). Plaintiff filed an Amended Complaint on April 30, 2012. (Doc. 14). On May 14, 2012, Speers Borough and Dunlevy Borough filed Motions to Dismiss the Amended Complaint. (Docs. 16 & 17). On December 18, 2012, the Court entered an Order dismissing all

claims against Speers Borough. (Doc. 23). The Court also granted in part and denied in part Dunlevy Borough's Motion to Dismiss, leaving three surviving claims: an equal protection claim, a substantive due process claim and a claim for declaratory and injunctive relief. (Id.).

On March 15, 2016, Plaintiff filed a Second Amended Complaint, currently the operative pleading, asserting the three surviving claims against Dunlevy Borough. (Doc. 46). Following discovery, on June 8, 2016, the parties filed the instant cross motions for summary judgment, which are now ripe for the Court's consideration. (Docs. 51 and 54).

## B. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. See Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 172 (3d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Layshock ex rel. Layshock v. Hermitage Sch. Dist., 650 F.3d 205, 211 (3d Cir. 2011) (quoting Anderson, 477 U.S. at 247–48) (internal quotation marks omitted).

## C. ANALYSIS

### a. Count 1: Equal Protection Clause Claim

In Count I, Plaintiff asserts that Dunlevy Borough violated its rights pursuant to the Equal Protection Clause of the Fourteenth Amendment. (Doc. 46 at ¶¶ 85-109). Specifically, Plaintiff claims that: Dunlevy's 1988 Weight Limit Ordinance was selectively enforced against it; the 1996 Driveway Permit Ordinance impermissibly treats property owners within the Borough more favorably than property owners outside the Borough; and the 2015 Driveway Permit Ordinance imposes driveway construction requirements on non-residential uses that are not imposed on residential uses. (Id.). For the reasons stated below, Plaintiff has failed to establish any basis of record to support an equal protection claim against Dunlevy Borough, and thus the Court will grant summary judgment to Defendant on Count I of the Second Amended Complaint.

### i. There is No Evidence of Selective Enforcement of the 1988 Weight Limit Ordinance

To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination. Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990) (citing Batson v. Kentucky, 476 U.S. 79, 93 (1986)). In the context of an as-applied challenge, a plaintiff must demonstrate that it "receiv[ed] different treatment from that received by other individuals similarly situated." Id. (citing Kuhar v. Greensburg-Salem School Dist., 616 F.2d 676, 677 n. 1 (3d Cir. 1980)).

Plaintiff does not plead (nor has it established) that it is a member of a suspect class entitled to special protection under the Equal Protection Clause. It therefore must proceed as a "class of one." A successful "class of one" claim requires a plaintiff to establish two prongs: 1) that it has been intentionally treated differently from others similarly situated; and 2) that there is no rational basis for the difference in treatment. Vill. of Willowbrook v. Olech, 528 U.S. 562,

564 (2000). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). Courts in this Circuit have held that "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Toll Bros., Inc. v. Twp. of Moorestown, 2011 WL 2259507, at *6 (D.N.J. June 27, 2011) (quoting Curbside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)).

In its briefing, Plaintiff argues that "Campbell is similarly situated to Mon Rail," stating that "Campbell's use is industrial just like the proposed Antero use and the other industrial uses permitted on the Property such as the proposed construction staging area projects." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Doc. 61, at 14). The record evidence demonstrates, however, that Campbell is not in fact "similarly situated" to Plaintiff in "all relevant respects." Startzell, 533 F.3d at 203. First, the undisputed evidence shows that Campbell's use of Dunlevy Borough's public roads is far less intensive than Plaintiff's proposed use. As Council President Dana Landman testified, she sees "delivery trucks" driving to and from the Campbell property only "once or twice a month," and while she "sometimes" sees "huge trucks" driving to the Campbell property, "[i]t's not very often." (Doc. 53 at ¶¶ 31, 32; Doc. 62 at ¶¶ 31-32; Doc. 62, Supp. App., Ex. A, D. Landman Dep., at 41). In contrast, although Plaintiff disputes the number of trucks at issue, it seems to concede that, in order to conduct its proposed water withdrawal operations, Antero would have needed to operate 5,000 pound trucks on Dunlevy roads every day. (Doc. 53 at ¶¶ 87-88; Doc. 62 at ¶¶ 87-88). Furthermore, unlike Campbell, which posted a road bond on a *temporary* basis for the delivery of heavy equipment for a short-term construction project, Plaintiff's request to exceed the 10-ton weight limit set out

in the 1988 Weight Limit Ordinance was indefinite. (Doc. 53 at ¶¶ 33-34; Doc. 62 at ¶¶ 33-34). In addition, as Defendant argues, when Campbell asked to exceed the Borough's weight limits, it offered to post a bond in the amount of $12,500 – four times the bonding permit offered by Plaintiff. (Id.). For these reasons, the Court finds that Campbell is not "similarly situated" to Plaintiff in "all relevant respects."

However, even if Campbell and Plaintiff were similarly situated, the Court still would find that Defendant had a rational basis for denying Plaintiff's request for an Excess Hauling Permit in 2010. In denying Plaintiff's request, the Borough Solicitor noted Defendant's valid concerns regarding the "safety and potential damage to Dunlevy Borough streets and the existing railroad crossings" based on "information received from Kurt Lyles of Petroleum Land Services on behalf of Antero Resources and the public comment." (Doc. 55 at ¶ 10; Doc. 63 at ¶ 10; see Doc. 46-12, Second Amended Complaint, at Ex. L (March 18, 2010 Letter)). Among other things, as Plaintiff admits, residents of Dunlevy Borough voiced concerns that Antero's proposed use of heavy industrial trucks "moving through the narrow streets of Dunlevy would cause disruption to the community." (Doc. 53 at ¶ 89; Doc. 62 at ¶ 89). Indeed, even Plaintiff admitted in his filings before the Court of Common Pleas of Washington County that operating commercial vehicles on Dewey Street is "dangerous . . . because of the need to cross the ungated rail road tracks owned by (Norfolk & Southern RR), then proceed up an extremely steep hill to the intersection of Dewey Street and Rt. 88, which is an uncontrolled intersection for traffic on Rt. 88." (Doc. 53-1, App., Ex. D at ¶ 4; see also id. ("Access to Rt 88 via Dewey Street is extremely dangerous because of the distance and speed limitations in either direction on to Rt. 88, which do not meet PennDOT's required minimum standards. Motor vehicle accidents, at the present time, already occur on a regular basis and increased motor vehicle traffic, which would

include heavy trucks, would only make the intersection even more dangerous.")).[1] Notably, Plaintiff's safety concerns ultimately were confirmed by Mackin Engineering, which issued a report stating that it was unsafe for vehicles such as those proposed by the Antero operation to access Route 88 from Dewey Street. (Doc. 53 at ¶ 96). Although Plaintiff challenges the "assumptions" used by Mackin Engineering, Defendant was entitled to rely on these findings to determine that Plaintiff's proposed use of Dewey Street threatened the stability of its roadways and the safety of its residents. (Doc. 62 at ¶ 96).

Because the Court finds that Defendant had a rational basis for denying Plaintiff's request for an Excess Hauling Permit, Plaintiff's claim of selective enforcement of the 1988 Weight Limit Ordinance fails.

ii. **Plaintiff's Facial Challenges to the 1996 and 2015 Driveway Permit Ordinances Fail**

Plaintiff's facial challenges to the 1996 and 2015 Driveway Permit Ordinances also fail. In order to bring a facial challenge to a municipal ordinance under the Equal Protection Clause, a plaintiff must establish that the municipality "has irrationally distinguished between similarly situated classes." Rogin v. Bensalem Tp., 616 F.2d 680, 689 (3d Cir. 1980). There is a "strong presumption of validity" when examining an ordinance under rational basis review, and the burden is on the party challenging the validity of the legislative action to establish that the statute is unconstitutional. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314-15 (1993). "These challenges fail when 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Highway Materials, Inc. v. Whitemarsh Twp., 386 Fed. Appx. 251, 259 (3d Cir. 2010) (quoting Heller v. Doe, 509 U.S. 312, 320 (1993)); see also City

---

[1] Plaintiff does not deny making these statements—which constitute judicial admissions—in its filings before the Court of Common Pleas of Washington County. (See Doc. 62 at ¶ 95) ("It is admitted that Mon Rail stated the averments in this paragraph.").

of Cleburne v. Cleburne Living Center, 473 U.S. 432, 430 (1985)) ("The general rule is that such official action is presumed valid and will be sustained if the classification drawn by the official action is rationally related to a legitimate state interest.")

In its briefing, Plaintiff states that Section 7 of Ordinance No. 6-7-1996 impermissibly "distinguishes between in-borough property owners, who only need to pay a permit fee for a driveway, and out-of-borough property owners who are banned from accessing their property from a Dunlevy public street" absent approval from the Borough Council, and argues that "[t]here is no rational basis for why Dunlevy would treat Mon Rail differently than any property owner . . . that owns land that is wholly within Dunlevy." (Doc. 61 at 10-11). Defendant concedes that Ordinance No. 6-7-1996 treats in-Borough and out-of-Borough property owners differently, but argues that such a distinction is permissible. (Defendant's Brief in Support of Summary Judgment, Doc. 52 at 13). The Court agrees with Defendant.

In County Board of Arlington County v. Richards, the United States Supreme Court explained that a municipality's distinction between residents and non-residents is not an invidious form of discrimination. 434 U.S. 5, 7 (1977). Rather, "[t]he Equal Protection Clause requires only that [such a] distinction . . . rationally promote the regulation's objectives." Id. Here, the Court finds that Ordinance No. 6-7-1996's distinction between residents and non-residents rationally promotes Defendant's legitimate government objectives of regulating traffic conditions and promoting the safety and convenience of its residents. Section 7 of the Ordinance—which requires out-of-Borough property owners to demonstrate that their use of private roads and driveways for ingress and egress onto the Borough's public roads will not create "undue and unnecessary traffic problems . . . [and] can be performed in a safe manner that will not inconvenience the Borough and its residents"—clearly furthers Defendant's goals of

maintaining safe road conditions for its residents. Furthermore, unlike out-of-Borough property owners, Defendant explains that in-Borough property owners "are required to go through the Borough's land development process (where any traffic safety and density issues would be addressed)." (Defendant's Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment, Doc. 59 at 15). Section 7 thus levels the playing field by requiring out-of-Borough property owners that are not subject to the Borough's land development process to demonstrate to the Borough Council that their proposed construction of a driveway and/or private road will not result in unsafe or disruptive traffic conditions.

Despite the fact that Defendant has stated legitimate bases for enacting Ordinance No. 6-7-1996, Plaintiff complains that "[i]f Mon Rail owned the identical piece of property and it was wholly within Dunlevy, the traffic concerns would be identical, yet it would not need to meet the requirements under the Driveway Ordinances." (Doc. 61 at 12). However, contrary to Plaintiff's argument, the Borough need not impose the *same* requirements on residents as it does on non-residents; to the contrary, as the Richards Court made clear, a municipality can give preference to residents over non-residents in regulating traffic conditions, so long as it does so to further a legitimate government interest. See Richards, 434 U.S. at 7; see also Zaroogian v. Town of Narragansett, 701 F. Supp. 302 (D. RI. 1988) (holding that limitation on certain beach facilities to town residents did not violate Equal Protection Clause as doing so rationally furthers the aim of allocating the limited number of such facilities, explaining that "[t]he rationing of this scarce resource is based on a rational premise"); Love v. Borough of Stroudsburg, 597 A.2d 1137 (Pa. 1991) (holding that an ordinance that granted parking preference to residents over non-residents "is not an arbitrary or unreasonable method" of achieving the goal of reducing "hazardous traffic conditions and the overburdening of existing streets and roads"). Under these circumstances, the

Court cannot find that Defendant had no rational basis for enacting Section 7 of Ordinance No. 6-7-1996, and thus Plaintiff's equal protection challenge to this legislation fails.

Likewise, the Court finds no merit in Mon Rail's claim that the 2015 Driveway Permit Ordinance violates the Equal Protection Clause by imposing requirements for non-residential uses that it does not impose for residential uses. Plaintiff has failed to adduce any evidence of record to establish that residential driveways are similarly situated with non-residential ones. The Court finds it readily apparent that residential and non-residential driveways are not similarly situated, as non-residential, commercial driveways generally involve a greater intensity of use, and generate more traffic, heavy trucking, and noise than do residential driveways. See Silverwing at Sandpoint, LLC v. Bonner Cty., 2013 WL 5274232, at *9 (D. Idaho Aug. 14, 2013) (finding that "a legitimate reason existed for the difference in treatment between a residential community and commercial enterprises").

Finally, the Court rejects Plaintiff's claim that the 1996 and 2015 Driveway Ordinances are invalid, on their face, because they allegedly were enacted for an improper purpose. (Doc. 61 at 12 ("It is clear, or at the very least disputed that based on the timing of the Driveway Ordinances and the fact that Mon Rail is the only Dunlevy property owner impacted by the Driveway Ordinances, that Dunlevy intentionally tailored the ordinances to directly disrupt any development on Mon Rail's property, while insuring that other commercial or industrial developments within Dunlevy were not disturbed.")). Because the Court finds that Defendant had a legitimate interest in passing these Ordinances, it is irrelevant whether or not they were also passed with improper motives. As the Supreme Court explains, "when undertaking a rational basis review, the party defending the constitutionality of the action need not introduce evidence or prove the actual motivation behind passage, but need only demonstrate that there is

some legitimate justification that could have motivated the action." ACMEC v. West Pikeland Township, 2010 WL 2635979, at *12 (E.D. Pa. June 25, 2010) (citing FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314–15, (1993)); see also County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 169 (3d Cir. 2006) (noting that courts should invalidate legislation "only if the governmental body could have had no legitimate reason for its decision"); Acierno v. New Castle County, 2000 WL 718346, *4 (D. Del. May 23, 2000) (noting that, under rational basis review, "[t]he actual motivations of the [governmental body] are entirely irrelevant").

In short, the Court finds no merit in Plaintiff's claim that the 1996 and 2015 Driveway Ordinances are facially invalid under the Equal Protection Clause, and will grant summary judgment to Defendant on Count I of the Second Amended Complaint.

### b. Count 2: Substantive Due Process Claim

Count II of the Second Amended Complaint asserts a violation of Plaintiff's substantive due process rights pursuant to the Fourteenth Amendment's Due Process Clause. (Doc. 46 at ¶¶ 110-129). In its briefing, Plaintiff concedes that it "has not met its burden to establish 'conscience shocking' behavior required to proceed on an 'as applied' substantive due process claim against Dunlevy." (Doc. 61 at p. 15). However, Plaintiff contends that Section 7 of Dunlevy's Ordinance No. 6-7-1996 is an "arbitrary or irrational legislative action" and "void for vagueness," and thus facially unconstitutional. (Plaintiff's Brief in Support of its Motion for Partial Summary Judgment, Doc. 57 at 6-10).

For the reasons discussed above, the Court finds that Ordinance No. 6-7-1996 is not an "arbitrary or irrational legislative action." To the contrary, the Court finds that this legislation is rationally related to the legitimate government objective of preventing unsafe and/or inconvenient traffic conditions. Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68 (1981)

("The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life."). The Court notes that federal courts "largely defer to legislative judgment on such matters as zoning regulation because of the recognition that the process of democratic political decisionmaking often entails the accommodation of competing interests, and thus necessarily produces laws that burden some groups and not others." Pace Res., Inc. v. Shrewsbury Twp., 808 F.2d 1023, 1035 (3d Cir. 1987). Accordingly, this Court "will not substitute its judgment about land use policy and thereby undermine the legitimacy of democratic decisionmaking unless the local legislative judgment is without a plausible rational basis." Id. Here, as discussed above, the Court finds that Ordinance No. 6-7-1996 represents a legitimate and constitutional exercise of the Borough's police power, and thus rejects Plaintiff's claim that the ordinance is "arbitrary or irrational."[2]

The Court also disagrees with Plaintiff that Section 7 of Ordinance No. 6-7-1996 is "void for vagueness." A law is "void for vagueness" if it: "(1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" United States v. Stevens, 533

---

[2] The Court also finds no merit in Plaintiff's argument that it is "impossible" for Plaintiff to access its own property as a result of Ordinance No. 6-7-1996. (Doc. 57 at 7). Section 7 of Ordinance No. 6-7-1996 is not an "outright ban" on accessing out-of-Borough properties, as Plaintiff asserts. Rather, Section 7 provides public safety regulations for new driveway installations. (Doc. 46-13). Furthermore, as clearly stated in the Ordinance, residents seeking access to property located outside of Dunlevy Borough are permitted to file a petition with the Borough Council for a hearing. (Id.). As Defendant notes, Plaintiff has yet to file a written petition for a hearing under Section 7 of Ordinance No. 6-7-1996. (Doc. 53-1, App., Ex. H, Umbel Dep., at 80). Finally, although Defendant has indicated that it would deny Plaintiff's application pursuant to Section 7 of Ordinance No. 6-7-1996 to construct a private roadway for the purpose of transporting 5,000 pound trucks to and from the Subject Property, (see March 18, 2010 Letter, Doc. 46-12, Second Amended Complaint, at Ex. L), Plaintiff has presented no evidence that Defendant would deny an application by Plaintiff to construct a private roadway for another, less intensive use. Thus, there is simply no evidence, at this point, that Defendant effectively has "banned" Plaintiff from accessing its property.

F.3d 218, 249 (3d Cir. 2008) (quoting <u>Hill v. Colorado</u>, 530 U.S. 703, 732 (2000), <u>aff'd</u>, 559

U.S. 460 (2010)).  As the Supreme Court has stated, "economic regulation is subject to a less

strict vagueness test because its subject matter is often more narrow, and because businesses,

which face economic demands to plan behavior carefully, can be expected to consult relevant

legislation in advance of action."  <u>Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc</u>.,

455 U.S. 489, 498 (1982).  In addition, courts explain that "[l]aws with civil consequences

receive less exacting vagueness scrutiny" than do criminal laws.  <u>Arriaga v. Mukasey</u>, 521 F.3d

219, 223 (2d Cir. 2008).

      Section 7 of Ordinance No. 6-7-1996 provides that an applicant who seeks to construct a

driveway to access property outside the Borough must demonstrate to the satisfaction of the

Borough Council that the applicant's use will not create "undue and unnecessary traffic problems

on Dunlevy Borough streets, and that the use can be performed in a safe manner that will not

inconvenience the Borough and its residents."  (Doc. 53 at ¶ 65; Doc. 62 at ¶ 65).  The Court

does not find that these provisions are so vague as to violate due process.  Rather, Ordinance No.

6-7-1996 contains "standards and permitted uses which are appropriately delineated in

commonplace, familiar terms and categories."[3]  <u>Harris v. Township of O'Hara</u>, 2006 WL

3231876 (W.D. Pa. Nov. 7, 2006); <u>see</u> <u>also</u> <u>Price v. Smith</u>, 207 A.2d 887, 993 (Pa. 1965) (the

---

[3] As evidence that Ordinance No. 6-7-1996 is "void for vagueness," Plaintiff cites to the
deposition testimony of the current Mayor of Dunlevy and one Borough Council member, who
testified that they did not know what the terms "convenience" and "undue and unnecessary
traffic problems" in Section 7 mean.  (Doc. 57 at 9-10).  However, given that the Borough
Council has never held a hearing on a request for a driveway permit pursuant to Section 7 (as
Plaintiff never sought such a hearing), it is not surprising that these two individuals did not know
exactly how they would interpret these terms, in the abstract, if they theoretically were presented
with such a request.  This is not evidence that the terms, in and of themselves, are
unconstitutionally vague.

phrase "the character of the neighborhood" was "not so vague and indefinite that uniform application could not be assured").

Furthermore, even if the language of Ordinance No. 6-7-1996 fails to provide adequate guidance to applicants, Plaintiff could have obtained further clarification had it filed an application or petitioned for a hearing before the Borough Council.  The Supreme Court has held that regulations are not unconstitutionally vague where one "may have the ability to clarify the meaning of a regulation by [his] own inquiry, or by resort to administrative process."  Hoffman Estates, 455 U.S. at 497–99.  Here, as discussed, Plaintiff failed to avail itself of the administrative process set out in Section 7—*i.e.*, to petition the Borough Council for a hearing— and thus did not give the Council an opportunity to clarify the allegedly "vague" terms in Section 7 of the Ordinance.

Finally, contrary to Plaintiff's argument, the fact that Ordinance No. 6-7-1996 grants the Borough Council substantial discretion to determine whether proposed activity would create "undue and unnecessary traffic problems" and would not "inconvenience the Borough and its residents" does not render the ordinance unconstitutionally vague.  (Doc. 61 at 9).  To the contrary, courts have observed that "it is inherently impossible for zoning ordinances to expressly identify each permitted use," and thus a high "degree of discretion . . . is routine, and . . . does not render the zoning statute/ordinance unconstitutionally vague."  Harris, 2006 WL 3231876, at *11; see also CMR D.N. Corp. v. City of Phila., 829 F. Supp. 2d 290, 301 (E.D. Pa. 2011) ("A degree of discretion is necessary and is entirely consistent with the long history of land use law in Pennsylvania.").

Accordingly, Plaintiff has failed to establish that Ordinance No. 6-7-1996 in any way violates the Substantive Due Process Clause of the Fourteenth Amendment, and the Court will grant Defendant summary judgment as to Count II. [4]

### c.  Count 3: Declaratory and Injunctive Relief

Count III of the Second Amended Complaint seeks declaratory and injunctive relief based on Defendant's alleged violations of the Equal Protection and Substantive Due Process Clauses of the Fourteenth Amendment.  (Doc. 46 at ¶¶ 130-136).  Because Plaintiff has failed to present evidence to support the underlying constitutional claims, the Court will not order declaratory and/or injunctive relief to remedy the alleged violations.  Accordingly, the Court will grant summary judgment to Defendant as to Count III.

## II.  ORDER

For all the reasons stated above, Defendant's Motion for Summary Judgment (**Doc. 51**) hereby is GRANTED, and Plaintiff's Motion for Partial Summary Judgment (**Doc. 54**) hereby is DENIED.  A judgment order pursuant to Federal Rule of Civil Procedure 58 will follow.


December 12, 2016

s/Cathy Bissoon<br>
Cathy Bissoon<br>
United States District Judge

cc (via ECF email notification):

All counsel of record.

---

[4] Because the Court finds no constitutional violation here, it need not reach Defendant's alternative argument that Plaintiff's proposed water withdrawal use on the Subject Property was not permitted by either the Speers Borough Zoning Ordinance or the 2005 Mid Mon Valley Regional Zoning Ordinance.  (See Doc. 52 at 7-10).